The next case this morning is 5-210-426 Mahan v. Marion Police Pension Board et al. Arguing for the appellant Joshua Mahan is Eric Kirkpatrick. Arguing for the appellee Marion Police Pension Board et al is Dennis Orsi. Each side will have 15 minutes for the argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning gentlemen. Good morning. Mr. Kirkpatrick. Would you like to proceed? I will. Let me set up my view here a little bit. Okay. Good morning. May it please the court. Can everyone hear me okay? It's a little muffled, but we can hear you. I can hear you. Justice Vaughn. Justice Wells. Good. A little muffled, but I can hear him and understand. Okay. Well, if I need to back up from the speaker or move closer, let me know. May it please the court. My name is Eric Kirkpatrick and I represent Mr. Mahan and this cause. This case involves entitlement to a disability pension for a police officer who worked in Marion, Illinois. Now, at the outset, before I get into the standard of reviewing things, what I want to point out is that this is not a situation where the question is whether he is initially entitled to be in the line of duty disability pension. This is a question of whether he has recovered from his disability such that he is no longer entitled to it. And there's a difference. And I will explain that as I go on here. First of all, with regard to the standard of review, this is an administrative review and the standard of review for factual findings, manifest weight of the evidence. That's not true for questions of law. And what we have here is a mixed, mixed question of law and facts, which I will get into in a moment. Particularly with regard to the police pension code, the statute is to be liberally construed in favor of the applicants. One of the things that I noted in reviewing this was documentary evidence can be reviewed de novo. And what we have here is mostly documentary evidence. The only testimony in this case came from Mr. Mayhem. Now, to give you a little history here and why I think the question is not whether he's entitled to disability, but whether he's improved is back in 2011, this gentleman was injured. In 2012, the city sent him for the board, sent this man for review to determine whether he qualified for in the line of duty benefits. The statute that governs that is part of the pension code 40 ILCS 53-114-1. And that says if a police officer as a result of sickness, injury is found to be disabled or mentally disabled for service from the police department, then he's entitled to 65% of his pay. In 2012, the city, the police board sent this gentleman for evaluation by two orthopedic doctors. One was a Dr. Rari, Bernard Rari. And then there was another bring up Dr. Rari and focus on that. But both doctors said that this gentleman qualified for disability under the statute that I just cited. So fast forward. And in 2018, the board pursuant to another statute within the pension code, section 53-115, that says the board shall have a person reviewed once a year. They had this gentleman reviewed. And in 2018, the board who reviewed, who sent this gentleman to a Dr. Yazzie, and who decided that this gentleman was not disabled. An appeal was taken to the Williamson County Circuit Court. The Williamson County Circuit Court in 2019 found that this gentleman was no longer disabled. Didn't say he'd recovered, just said he was not disabled. I'm sorry. The Williamson County Court reversed the board's finding that he wasn't disabled, but he was disabled. They reinstated his benefits. 2020 then the board sent this review again with Dr. Yazzie. Dr. Yazzie determined that the man was not disabled. Sorry about that. Determined that the man was not disabled. And the board then based on Dr. Yazzie's report said that this man was no longer disabled. Now then, the decision then went on appeal to the Williamson County Circuit Court that affirmed the board. So that's why we're here today. Mr. Kirkpatrick, did Dr. Yazzie say he's no longer disabled, or did he say that he was never disabled? I'm going to have to find that exact quote for you. I've got it in my brief. I believe he said he is not disabled. And he did have a note signed saying he could return to work. But isn't that the difference here with Dr. Yazzie is the perspective of whether he could return to work or whether he was ever injured at all? If I understand what you're saying, I think that is exactly my distinction. Dr. Yazzie, in my opinion, was faced with the question and answered the question, whether it was asked of him or not, of whether this gentleman was ever disabled in the first place. If you look at his notes, he doesn't mention that this man has recovered from his disability. Dr. Yazzie, I'm sorry, Judge Welch, can you hear me? I can hear now. Go ahead. All right. Dr. Yazzie did not review any current records. Dr. Yazzie relied on old films that were several years old. He looked back at what he would have done back in 2011 and 2012. At no point in his report is there any discussion that he discussed this gentleman's symptoms with him, that he discussed the job duties with him that he could or could not do. There is no indication of that. What the standard is, is whether this gentleman has recovered from his disability. It's not whether he was disabled in the first place. And that's my point. If we look at this whole thing in the grand he has recovered from his disability. I'm not sure who bears the burden of proof in this case. Is it the claimant or is it the board? There's one appellate court case, I believe Peacock v. Board of Trustees of South Chicago Heights, that said the police officer bears the burden of showing he's still disabled. But there's a different case, Wilford v. Retirement Board of Fireman's Immunity, that says the board bears the burden of showing that he's recovered. So is it clear who bears the burden in this case? Absolutely not. I'm sort of glad that you found the same thing I did, because I was sort of worried that I missed something. But to my knowledge, there is no true direction. There's a conflict of who sustains the burden of proof here, who has that burden. In my opinion, who should have the burden of proof is who shall, according to the statute, send this gentleman, send Mr. Mahan or any claimant for a medical examination pursuant to section 3-115. It's not as though my client is told that he shall present himself for medical examination. I believe the statute refers to the board having the obligation to send him, and it is a shall statement. Did Dr. Yazdi's opinion discuss your client's condition in relation to the job he was supposed to do? No, sir. For example, Dr. Yazdi's opinion did note that your client had numbness in his hands. I would assume a police officer carrying a gun and a fire gun would have to have hands that aren't numb. Is that not an important consideration? I think that's an important consideration. But also, if you look at the claimant's testimony, and if you look at the true job duty list that this gentleman has for being a police officer, there's a lot more involved than what would be required of just the use of his hands. There's a lot more in terms of being able to respond quickly, being able to run, being able to chase a person, being able to get involved in an altercation. I think what you may be talking about, too, or getting at is, you know, this gentleman did go out and continue to qualify with a pistol. Well, qualifying with a pistol in a controlled environment is different from being able to draw a pistol in the middle of conflict or in an emergency. I think that that's a common sense aspect that the board ignored. When we're talking about the manifest weight of the evidence here, one of the things that I noticed that I did not notice when we went to hearing on this is that Dr. Yadze's CV that was submitted doesn't show that he's a licensed physician. Now, counsel brought up in his brief that I didn't object to that. Well, you know what? Maybe. Maybe I should have, but it doesn't say that he has to be a certified doctor or board certified doctor. It says he can be subjected to, the claimant is subjected to a medical examination. My point is Dr. Yadze didn't, according to his CV, he didn't even have a license at the time. And that goes to his credibility as much as anything in this entire case. What we have here, folks, is Dr. Reary, if we're weighing the evidence at this point, what we have is Dr. Reary, who examined this gentleman in 2012 at the request of the board. And he said, this gentleman's condition is permanent. He can't have surgery to make it better. This is the way he's going to be. He can no longer work as a police officer on a permanent basis. Then we have my client in 2020 going back to Dr. Reary. He could have gone to any number of doctors, but he went back to Dr. Reary. Again, same doctor chosen by the board. Dr. Reary says he's not able to work as a police officer. He's essentially the same. He can't have something done. He's never going to recover. He's not a surgical candidate. Then we have my client's testimony that is technically it is undisputed. We don't have anyone else testifying that they've seen this man out running three miles. We don't have anyone saying he's joined fighting classes or doing anything that would suggest that he's capable of engaging in the list of activities noted as required by a police officer. What we have, folks, is not a 16-page detailed report as the board itself noted in its decision. What we have is what amounts to six pages of a report from Dr. Yazzie. Only two-thirds of one of those pages has anything to do with exam findings. The court's bashing of him in 2019 and 10 pages of documents pertaining to anatomy and a lot of pages having to do with a low back condition that's unrelated. You note that one page, the first page I believe, is dedicated to the history of this incident. I think overall what we have is Dr. Yazzie, as the Williamson County Circuit Court noted in 2019, he had a predetermined mission. He was reciting the same thing that he did in 2018 when you saw him, that the court said was just a predetermined notion that this man was not disabled in the first place. Your honors, this is not the standard. We have to take this man and assume he was disabled and found disabled in 2012. We have to assume that Dr. Reary was accurate, that his condition was permanent, couldn't be changed. Mr. Kirkpatrick, could you speak to your opinion on the fact that the functional capacity evaluation test was not admitted for your client at the hearing? Which aspect, your honor? I think that it was wrong to not allow it into evidence for the simple fact that Dr. Yazzie relied on prior medical and it should have been allowed here. No, it wasn't. There's no indication in the record of that and in my opinion, as Judge Goffinette cited, that was not left in the record for anyone to see. I would think as part of the record prepared by the board, a rejected exhibit would still be in the record, even though the board may not have relied upon it. But a functional capacity evaluation is designed to determine whether a certain job can be performed. Isn't that true? Yes. And was there any other evidence in this case where somebody used the job description given by your client and compared it to his actual medical condition? Dr. Reary was privy to that in 2012. I would have to look back at Dr. Reary's report to see if he considered the job description in 2020, your honor. Quite honestly, I don't want to misrepresent that to the court. But when Dr. Reary was sent this stuff in 2012 and based his Okay, thank you. Your time has expired for this portion of your argument. Justice Welch, any questions? No questions. Justice Vaughn? Yes, I don't care if you answer the question now or address it in rebuttal, but I'd like to hear something about your opinion on Mr. Orsi serving as the board's attorney and also the judge in the case or the arbiter in the case and if that's any implications from that. I can address that now if you would like. You may go ahead. Okay. Here's what my position is on this. I believe there might be some sort of due process argument that maybe could have been made or can be made in this regard. But my research has indicated that it is fine for the attorney for the board to act as the hearing officer. My point with what I addressed in my brief, your honor, is when we look at all of this as a whole, we have a problem. And we have a problem in that I believe overall, this affects the credibility of Dr. Yazi's report, and the determination by the board. We have a situation where Mr. Orsi's writing letters to the doctor, he's giving the board the instruction that as I said, in my brief is not doesn't have to do with the question of whether this gentleman has recovered, it has to do with whether he was decision from the Williamson County Circuit Court, ending up in the hands of Dr. Yazi, as evidenced by the fact that he responded to the criticism that's go up in the head of him in 2019. Where did that come from? It's not in it's not noted in the letter from Mr. Orsi to the doctor. But my point is, if we look at this as a whole, we have to decide that this goes against the credibility of Yazi and the board's decision, especially since the board said this man is not disabled, and didn't say he has recovered. The board cited a 16 page detailed report that we know is not a 16 page detailed report. All of this, I believe, your honor, in the grand scheme of things affects the credibility not only of the process, but the determination of the doctor and the board. Thank you. Any further questions, Justice Welch? No further questions. Justice Vaughn? No, no questions. Thank you. Okay. Thank you, Mr. Kirkpatrick. Mr. Orsi, if you need a couple of extra minutes, we will certainly grant you that in light of Mr. Kirkpatrick's questioning. Thank you. Thank you, Justice. I appreciate that. And Justice Cates and Justice Vaughn and Justice Welch, I appreciate the opportunity to come before the court today to address issues on behalf of my client, the Marion Police Pension Board. The briefs lay out the facts of the case. I'd like to begin with this last issue brought up by Justice Vaughn regarding the role of the board attorney serving as a hearing officer in the case. In the brief that I presented to the court, I cited the McKee versus Board of Trustees of Champaign Police Pension Board. It's a 2006 case where this same issue was addressed. The appellate court in that case, in a very similar set of circumstances as we have here, indicated it was appropriate for the board attorney to serve as a hearing officer, cross-examine witnesses, and in essence, ask questions on behalf of the board. Understand this... The Gee case was based on the Thurow case, Thurow Police Pension Board versus Village of Fox Lake. And the Thurow case talked about there being two attorneys for the board, one who acted as prosecutor and one who acted as hearing officer. So that was a little different than what we have here, where you were the prosecutor and hearing officer and advisor to the pension board all at the same time. Yes, sir. There is a distinction between those two cases, I'll grant you. The Thurow case talked about a hearing officer and then a case presenting attorney. That's one way these administrative hearings have been presented. The other way is the format used in the McKee case, which was the board attorney acting as the hearing officer asking questions and cross-examining witnesses. So the court in the McKee case held that approach was appropriate. So I agree with the court that there are two different ways to approach these cases, but both have been upheld by the courts as appropriate. And I believe the... You'll recall in the record, Judge Goffinette, the transcript from the hearing there, he too raised this same issue and he cited his own case. It was a case out of a East St. Louis hearing that took place. And he asked both sides to brief that and draw any comparisons or distinctions between that case and the issue at hand. And I think ultimately the judge was convinced by his ruling supporting the board that there wasn't anything improper in terms of how the I acted as the board attorney and hearing officer. And I think it's very important to point this out. And that is when the procedures were outlined at the start of the hearing and a motion was made by the board to appoint myself as the board attorney hearing officer in the case, there was a roll call vote. After that motion was approved and we began the proceeding, there were rules and procedures that were read into the record. And then we went through the exhibit packet, identifying exhibits, et cetera. And all of those were presented before the applicant and his attorney. All of them were given opportunities, not once, but on two occasions to say, are you ready to proceed with the hearing? And on neither occasion, were there any objections raised by Mr. Kirkpatrick or his client that the board attorney was now going to serve as hearing officer? I represent 58 different police and fire pension funds in central and southern Illinois. I've been doing this work for 25 years. I can represent to the court that this is the format and the protocol that has been followed. Every time there are these disability hearings initially or the disability review hearings do take place on an annual basis by statute. So any given year I'm in my office, I'm probably conducting 25 of these hearings a year. And my counterparts in the state of Illinois that engage in this similar work through a statewide organization called the Illinois public pension fund association all follow this same format that I did in this case. So the only case law that we have are the two cases, Justice Vaughn, that you've cited. And there's another case, there's the Phillips case, Phillips versus board of fire and police commissioners. And in that case, it talks about the board cannot act as both the prosecutor and the judge in the same case, or can never be a merger of the prosecutorial and judicial functions in the court or quasi judicial proceeding. And I would argue this is a quasi judicial proceeding. In this case, you're serving as the attorney who develops the evidence for the board. You act as the hearing officer, you object to some of the evidence as hearing officer, then you rule on your own objections. You cross examine the claimant, you participate in the board's deliberations, and then you wrote the board's order. It seems like that's a whole lot of stuff happening on one side against the other side. I mean, how does Mr. Kirkpatrick's client feel like his case is being given fair consideration when you're serving in all those functions? These are non-adversarial proceedings. If you read the record as I've read the record, I don't think there's anything adversarial in terms of the questions that were asked by me as a hearing officer. Board members were also afforded the opportunity to ask questions. In every case, when Mr. Kirkpatrick brings up the fact that, well, I'm the one that wrote the letter to the doctor, I'm the one that gathered the medical records. That's normal protocol in these cases. Somebody has to be the person that is pulling together the information that will ultimately be presented to the pension board. The fact that there's what we refer to as cross-examination doesn't turn it into an adversarial proceeding. If you look at the questions that were asked, the questions that were asked were all designed to elicit information or clarify points that ultimately board members picked up on and asked their own questions. The issue about his ability to shoot a firearm is just one example of that. Mr. Orsi, how can you really say this is non-adversarial? You have the board taking one position and you have Mr. Kirkpatrick's client taking another. What is your definition of adversarial if this is not so? Well, I don't view this as adversarial in that whereas Mr. Kirkpatrick says that there's some preconceived agenda here, I would say this. In 2012, when this case initiated and his client was found disabled, I was not the board attorney at the time. I'm not even sure the board was represented by an attorney. If you look at the exhibits, the original minutes reflect that there were only two doctors that examined him, not the three required by statute. Ultimately, a decision was made by the then board in 2012. By statute, there were to be annual review hearings. I'm not sure those took place in the initial years. All we have in our record is the- My question was not a historical perspective. My question is, you've got a proceeding where Justice Vaughn laid out all of the things that you did. Then you have questioning back and forth between the parties. It seems to me this is clearly adversarial. Well, in addition to that, one of the board's third findings is that Joshua lacks credibility. I mean, that sounds adversarial to me. You're making a credibility finding that he lacks credibility because he didn't do enough to improve his condition. Let me remind the court that while I draft the document based upon the deliberations that took place after the hearing concluded, it is the board who approves that decision and signs off on that decision. As you can see on the last page of that decision, this is not an order of the hearing officer. This is an order of the board after their deliberations. You were in the deliberations, right? You were in there with them during the deliberations. I'm in there taking notes to try to figure out how the decision is to be worded based upon their deliberations. And giving them advice if they ask questions. If they ask me a question about a statute, statutory references and so forth, I do provide that. I can tell you in the 25 years I've engaged in this practice, when board members ask me, what do you think we should do? My response is I'm not here to tell you what the answer is. I'm here to answer procedural questions you might have or statutory references. You have to base your decision on the evidence and testimony presented. Mr. Orsi, you brought up the McKee case. In that case, it says that when you select a physician, if the board selects a doctor whose negative position on the issue of disability has been firmly established, then there may be an abuse of discretion. Do you agree with that? Well, I think you're going to the fact why was Dr. Yazdi selected a second time when he was selected the first time? Is that your point? Well, first of all, that's what McKee says. If you have a doctor whose opinion is firmly established on the issue, then the board may abuse its discretion when it preselects the same doctor. Isn't that what McKee says? That is in the McKee case. I would respond by telling you, since it is important, since Mr. Kirkpatrick brought it up about the history here, when the first review took place that you have in the record in 2018 and Dr. Yazdi was selected and issued his report that was then considered by the board and they determined that he was no longer disabled and that was appealed to Judge Goffinett. In Judge Goffinett's decision, it was accentuated by the applicant's attorney that Goffinett or that that Dr. Yazdi was focused on the cervical spine rather than the thoracic spine as part of his written opinion. And it was for that reason that the court then said we're going to reverse the board's decision. When the board came back the second year and that Dr. Yazdi was uh information about what Judge Goffinett had to say was to clarify that he did focus on the thoracic spine because that's the nature of the injury that he was asked to review. That's why this individual went out on disability in the first place and not his subsequent back surgery which he had the last time we were in court. But Dr. Yazdi never believed that the police officer here was injured to the extent claimed. Well if you take Dr. Yazdi's report in total, he in his opinion he obviously indicates he does not believe that Dr. Reary was correct in his determination that he was permanently disabled and he expresses that point of view. But at the end when the doctor is asked to opine as to whether or not this individual is capable of performing the duties of a police officer based upon the job description which he indicates he did review and consider, board exhibit six, he states that Mr. Mahan is physically able to perform the duties of a police officer. So he gets us to the conclusion that the board then considered which is the man is capable of performing police duties and that's what the board considered. But isn't capable of performing the duties the same as what he opined in his first report? He reached the same conclusion in the first report as he did in the second report but Judge Goffinette felt that there was a slant to the cervical spine as opposed to the thoracic spine and I think that's the clarity that Dr. Yazdi was trying to make in his recent opinion is that in viewing the cervicals or the thoracic spine which he was out for the disability, he's no longer disabled regarding that body part. And you use these no longer disabled. The issue here is whether or not he has recovered. Well in my view it's the same thing Justice. I mean I think it's the same you think it's the same Bert the same question of fact. I do. I see no distinction. And is that why you wrote the form for the doctor to check the box as you did? That is a yes that's a standard form. The statute indicates there needs to be a certification of doctor form included with the report in order for the board to consider it. And you wrote that for Dr. Yazdi? The certification of doctor form that is correct. When Dr. Yazdi was selected who selected Dr. Yazdi? Did you do that? No ma'am the board selects the doctors. I'm just the one that facilitates presenting information to the doctor such as the letter the medical records. Did you did you send the prior court order to Dr. Yazdi? You know that was asked by Dr. or by Judge Goffinette and honestly I don't recall there's nothing in my notes that reflect how he wound up getting that opinion as I've reflected on it over time. I suspect that the doctor had made an inquiry at some point in time how the original case turned out and was told and had asked at some point to see a copy of I don't think it was contemporaneous with the second review if you will but I think that's where he got it was somewhere after the first review in the court hearing and then it was about a year or so later that we engaged in the second review. Dr. Yazdi's report did contain a finding of lack of function and I don't I'm not going to read ridiculous cervical problems numbness in the hands and arms but there's no information correlating Joshua's condition to the job requirements of being a police officer is there does he say anywhere in his report how that would affect being a police officer? Well he does say in his report that he considered the job description which was provided along with the other documentation so we have to assume that everything that he says in there took that into consideration. I would say that's contrary to Dr. Reary's opinion you know the the one-page letter opinion dated January 14, 2021 from Dr. Reary doesn't reference anything to do with the job description doesn't even reference that he was police officer and under his diagnosis he says m54 12 radicopathy cervical region. Now this whole case is about thoracic spine not cervical spine as the court's aware there's cervical spine thoracic spine and lumbar spine those are three separate body parts and the Judge Goffinette on the first review in 2018 was critical that Yazdi didn't focus on the thoracic spine but was rather the cervical spine and now we have Dr. Reary who supposedly was was brought in because he did the initial review in 2012 but he never references that as part of his one-page report and he focuses in his response to the cervical region which is a different body part and in the in 2018 in front of Judge Goffinette that that Mr. Mahan showed up in a back brace and the Judge questioned what's he doing coming to court in a back brace and and it was brought out that he had had another surgery this time to another body part of his back not the thoracic spine and that you know it was separate and apart from the case that we have at hand. Just as Kate said you could have an additional time I have one other question I don't think you've addressed I asked Mr. Kirkpatrick about who bears the burden and I talked about the the Peacock case says the burden's on the police officer and the Wilford case says the burden's on the board who do you believe the burden is on? I take it the burden's on the police officer. In the in the record when we look at the transcript I mean under the the procedures that laid out it says the applicant has a burden approving his continued entitlement to a disability pension that was the burden that was laid out it was not objected to at the time and that to me is is a big issue because you know if we go back to the Gaston case and and many other cases if there's an issue that's going to be brought up on appeal it needs to first be raised at the initial hearing and the burden of proof issue was not challenged the hearing officer issue was not challenged this issue about Dr. Yazdi's CV being outdated was not objected to as a matter of fact in the record when we got to Dr. Yazdi's CV as the exhibit number we asked specifically any objections and his answer was no objections so he didn't bring that up at the fifth district appellate court review I mean it's unconscionable to me that these issues suddenly have importance at a later date but had no importance at the time of the initial hearing. Can the board I mean who determines the burden can the board just say we we determine the burden is on the police officer proof or is it determined by the law? Well I think I think Mr. Kirkpatrick uh and in our prior briefs and appearances in in the uh in the circuit court when trying to issue uh both came to the same conclusion which is we don't find any statutory authority that tells us who has the burden we have the statutes which we reviewed and you know to the extent we're trying to extrapolate you know who has the burden I can simply say that in this case the burden was stated as it was but I would also represent to the court that if we said should should the burden be differently okay the the documents that are under review Dr. Reary's report uh Dr. Yazdi's report uh when taken into consideration uh that's the same information the board was going to look at no matter who had the burden and I can't imagine there's a different conclusion if we now said there's a different burden go back and look at the same information and if I might finalize I appreciate the court giving me a little extra time this issue about the the functional capacity evaluation um the functional capacity evaluation was initiated back in 2018 by Mr. Mahan and his then attorney um Mr. Zirkelbach uh they requested the FCE they brought it in it was admitted in the 2018 hearing and considered by all parties at that time when Mr. Kirkpatrick then comes forward and well I'd like to tender that same FCE from 2018 the real question of relevancy becomes important because what's the consideration of the man's condition in 2018 the question before the board is what is his condition today and if Mr. Kirkpatrick wanted to get a new FCE he had every opportunity to do so and present it uh as contemporaneous evidence but to suggest that something from three years earlier should be produced uh seems to me it begs of relevancy if that's your argument Mr. Orsi then what recent medical did Dr. Yazdi rely on in order to arrive at his conclusions well Dr. Yazdi is performing a contemporaneous exam of Mr. Mahan and he states in his report what he reviewed uh but everything he reviewed was old and and he has here to to the extent that there are no new medical records which oftentimes is the case in these review cases um if we have no new medical to look at had there been a new FCE conducted uh by Mr. Mahan or his attorney it would have been uh but the FCE the FCE was discussed at length in the prior order of the court and yet it was the only exhibit that you denied as the hearing officer it was discussed at length in 2018 because it was produced in 2018 it was relevant but the board in this case did not have the benefit of seeing it uh because it was the only exhibit you denied correct that is correct it's it's the same board that was in place in 2018 so we can't say that they didn't see we don't know we don't know what the board can remember or not remember understood yes ma'am that is correct okay uh justice welsh any other questions no questions justice wan no thank you okay thank you Mr. Orsi for your arguments Mr. Kirkpatrick do you have some rebuttal you're still muted you're muted okay uh thank you your honors thank you Mr. Orsi uh for the comments there's a few things here that really really concern me okay uh that were brought up in Mr. and I've thought about how to address this but I do want to point out you know the question was raised with Mr. Orsi I believe by Justice Cates that or at least Mr. Orsi commented on why um Dr. Yadze paid so much attention to the 2019 decision of Judge Goffinette he said that um he thought he needed to he gave an example or said exactly what he meant and that was that he felt like the judge gave too much weight to a cervical issue instead of the thoracic issue however later on when asked by one of the justices how um Mr. how Dr. Yadze got the report he acted like he didn't know so to me when we're talking about him being essentially the fox in charge of the hen house on this case he said two conflicting things to he has said I know exactly why he commented on this judge's order yet how did he get it I don't know I don't know that's what he told this court essentially the other thing that I want to point out is Mr. Orsi is completely incorrect about this being um only a thoracic issue if you look back I will indicate it is a overlapping cervical thoracic issue overall for Mr. Orsi to now come in and comment about the low back that was not even part of the consideration of disability before and act like the judge relied on it is I can't even comment um the other issue that um I want to bring up is this whole issue of Dr. Yadze and his CV I've been practicing for 30 years if the doctor is purporting himself to be a doctor I generally don't check that stuff but I'll tell you what I don't think that the introduction of that CV being objected to or not being objected to makes any difference in the world and the reason being is because by that CV that Mr. Orsi submitted Dr. Yadze supposedly Dr. Yadze is not a licensed physician and was not a licensed physician at the time we can't assume we can't take that step to assume that he was again I think a lot of this case hinges on the credibility and if we're looking at the credibility of a doctor chosen by the board or Mr. Orsi either one we can't you can't assume this gentleman is even a doctor it qualifies I suppose as a medical examination but doesn't the MD degree mean something and maybe that's not important to this court but I by itself but I think overall that it is the last thing I want to point out is in listening to all this in order for this court and for Williamson County the circuit court there to find in favor of the board it's absurd and it's absurd because in order to do so this court would have to find that Yadze who was found not to be credible for several reasons in 2019 is all of a sudden credible he's chosen again supposedly by the board at the direction of their learned counsel to choose a doctor that was already determined by the court not to be credible they have him examined again and now they come in and try to say this isn't some sort of predetermined notion we have to assume that excuse me along the same lines of absurdity you have to decide Yadze's credible even though he didn't review any recent medical he relied on old films he did the same thing that he did in 2019 for which Judge Galpinette found him not to be credible you know overall this credibility of Mr. Orsi being involved there are cases that say he can be and can't be the board's attorney and may I finish if you wind it up yes I'm winding up there are decisions both ways I don't think there's an inherent problem with him being the attorney for the board but folks we have what appears to be a lot of overreach in here and what we don't know is what went on in that in that board's decision you know he says he was there just to take notes yet the decision reflects a lot of things that I don't think would have come from a board um I think okay Mr. Kirkpatrick I'm gonna have to cut you off there that's fine thank you uh Justice Welsh any questions no questions Justice Vaughn no questions okay thank you both for your arguments today this matter will be taken under advisement and we will issue an order in due course